DANNY YOO (State Bar No. 251574)
ANNETTE MORASCH (SBN 263797)
amorasch@hrc-la.org
HOUSING RIGHTS CENTER
520 S. Virgil Ave., Suite 400
Los Angeles, CA 90020
Phone: (213) 387-8400, ext. 33
Fax: (213) 381-8555
Attorneys for Plaintiffs

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY: ___
10 DEC -6 PM 2:09
FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**TOYA FULLER-CORONA,** an individual; **DUQUON CORONA,** an individual; **JAVIER CASTRO,** an individual; **PATRICIA CASTRO,** an individual; **and FAIR HOUSING FOUNDATION,** a California non-profit corporation;

            Plaintiffs,

    **vs.**

**HUNTLEY FAMILY TRUST** d/b/a **RUGBY APTS.; LONG BEACH AFFORDABLE HOUSING COALITION, INC.,** a California corporation; **GATEWAY AFFORDABLE HOUSING CORPORATION,** a California corporation d/b/a **GATEWAY AFFORDABLE HOUSING COALITION; HOWARD KIM HUNTLEY,** as an individual owner, as Executive Director of both Long Beach Affordable Housing Coalition, Inc. and Gateway Affordable Housing Corporation and as trustee of Huntley

Case No.: CV10 9345 GAF JCGx

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES FOR VIOLATIONS OF:**
1. The Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601 et seq.;
2. California Fair Employment and Housing Act, Cal. Gov't Code § 12955, et seq.;
3. Unruh Civil Rights Act, Cal. Civil Code § 51;
4. Unfair Business Practices Act, Cal. Bus. & Prof. Code §17200, et seq;
5. Negligence

**JURY TRIAL DEMANDED**

1  Family Trust; **ROSA VILLAGRAN**,
2  as an individual and as a managing
   agent of Huntley Family Trust d/b/a
3  Rugby Apts.; **CARLOS**
4  **VILLAGRAN**, as an individual and as
   a managing agent of Huntley Family
5  Trust d/b/a Rugby Apts.; **LOUIS**
6  **MELE**, as an individual and as a
   managing agent of Long Beach
7  Affordable Housing Coalition, Inc., and
8  Gateway Affordable Housing
   Corporation; **BARBARA MELE**, as an
9  individual and as a managing agent of
10 Long Beach Affordable Housing
11 Coalition, Inc., and Gateway Affordable
   Housing Corporation; DOES I-X,
12 inclusive,

13

14                    Defendants.

15 **I.    Introduction**

16        This is an action for declaratory and injunctive relief and damages against:
17 Long Beach Affordable Housing Coalition, Inc.;  Gateway Affordable Housing
18 Corporation d/b/a Gateway Affordable Housing Coalition;  Huntley Family Trust
19 d/b/a Rugby Apts.;  Howard Kim Huntley;  Rosa Villagran;  Carlos Villagran;
20 Louis Mele;  Barbara Mele and Does I-X (collectively "Defendants"), for
21 discrimination in the rental of housing based on familial status.  At two separate
22 rental properties ultimately owned and managed by Defendant Howard Kim
23 Huntley, Defendants have engaged in a pattern or practice of conduct with the
24 purpose and the effect of discriminating against families with minor-aged children
25 by among other things: imposing and enforcing unreasonably restrictive rules,
26 terms and conditions on the tenancies of families with children; making written
27 and oral statements of preference disfavoring families with children; retaliating
28 against persons who have opposed the discriminatory acts; and conspiring, abetting

and aiding one another to engage in the discriminatory acts. This action arises under the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601, *et seq,* and related state laws.

## II. Jurisdiction and Venue

1.     The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. § 1331 in that the claims alleged herein arise under the laws of the United States, specifically the federal Fair Housing Act, 42 U.S.C. §§ 3601-3619 ("FHA"). The state law claims form the same case and controversy as the federal law claims. Thus, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiffs' state law claims.

2.     All Defendants reside or do business in this district and all events giving rise to this complaint occurred in this district. Thus venue is proper in the Central District of California under 28 U.S.C. § 1391(b)(2).

3.     This Court has authority to grant declaratory and injunctive relief as well as actual and punitive damages pursuant to 42 U.S.C. § 3612(o)(3), and 42 U.S.C. § 3613(c)(1). The Court also has the authority to award Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 3613(c)(2).

## III. PARTIES

1.     At all times mentioned and relevant herein, Plaintiff Toya Fuller-Corona ("Toya") was and is a resident of the County of Los Angeles. From the year 2001 up to the present, Toya has been a tenant of a two-bedroom apartment located at 7126 Somerset Boulevard, Paramount, California, owned by Defendant Long Beach Affordable Housing Coalition, Inc. ("LBAHC") and managed by Defendants Gateway Affordable Housing Corporation ("Gateway"), Howard Kim Huntley, LBAHC, Louis Mele and Barbara Mele.

2.     At all times mentioned and relevant herein, Plaintiff Duquon Corona ("Duquon") was and is a resident of the County of Los Angeles. From the year

1  2005 up to the present, Duquon has been a tenant of a two-bedroom apartment
2  located at 7126 Somerset Boulevard, Paramount, California, owned by LBAHC
3  and managed by Gateway, Howard Kim Huntley, LBAHC, Louis Mele and
4  Barbara Mele.

5      3.    At all times mentioned and relevant herein, Plaintiff Javier Castro
6  ("Javier") was and is a resident of the County of Los Angeles.  On September 29,
7  2001 up to the present, Javier has been a tenant of a one-bedroom apartment ,
8  located at 6217 ½ Rugby Avenue, Huntington Park, California, which is owned by
9  Defendant Huntley Family Trust and managed by Defendants Howard Kim
10  Huntley, Rosa Villagran and Carlos Villagran.

11      4.    At all times mentioned and relevant herein, Plaintiff Patricia Castro
12  ("Patricia") was and is a resident of the County of Los Angeles.  From September
13  29, 2001 up to the present, Patricia has been a tenant of a one-bedroom apartment,
14  located at 6217 ½ Rugby Avenue, Huntington Park, California, which is owned by
15  Defendant Huntley Family Trust and managed by Defendants Howard Kim
16  Huntley, Rosa Villagran and Carlos Villagran.

17      5.    Plaintiff Fair Housing Foundation (the "FHF") is a non-profit
18  corporation organized under the laws of the state of California with its principal
19  place of business at 3605 Long Beach Boulevard, Suite 302, in Long Beach,
20  California.  FHF's mission is to actively support and promote fair housing through
21  education and advocacy to the end that all persons have the opportunity to secure
22  the housing they desire and can afford, without discrimination based on their race,
23  color, religion, gender, sexual orientation, national origin, familial status, marital
24  status, disability, ancestry, age, source of income or other characteristics protected
25  by law.  FHF engages in activities to identify barriers to fair housing in Los
26  Angeles and Orange Counties and to counteract and eliminate discriminatory
27  housing practices.  To this end, the activities in which FHF engages include, but
28  are not limited to: providing outreach and education to the community regarding

1  fair housing; investigating allegations of discrimination; conducting tests and

2  surveys of housing facilities to determine whether freedom of residence and equal

3  opportunity are provided; and taking such steps as it deems necessary to assure

4  such equal opportunity and counteract discriminatory housing practices.   FHF is

5  an "aggrieved party" within the meaning of 42 U.S.C. § 3602(i) and California

6  Gov. Code § 12927(g).

7        6.      Upon information and belief, Defendant Huntley Family Trust owns

8  and operates Javier and Patricia's rental apartment unit, located at 6217 ½ Rugby

9  Avenue, Huntington Park, California ("Rugby Property").  Huntley Family Trust

10  has issued notices to Javier and Patricia using the name "Rugby Apts."

11        7.      Upon information and belief, Defendant Long Beach Affordable

12  Housing Coalition, Inc. ("LBAHC") is a corporation which owns and operates

13  Toya and Duquon's rental apartment unit, located at 7126 Somerset Boulevard,

14  Paramount, California ("Somerset Property").   LBAHC also manages the

15  Somerset Property.

16        8.      Upon information and belief, Defendant Gateway Affordable Housing

17  Corporation d/b/a Gateway Affordable Housing Coalition ("Gateway") is a real

18  property management company responsible for management of the day-to-day

19  operations of the Somerset Property.  Gateway is a corporation, whose license to

20  do business has been suspended by the California Franchise Tax Board.

21  Nonetheless, Howard Kim Huntley and Barbara Mele have utilized "Gateway"

22  letterhead in communications with Toya.  Inasmuch, LBAHC, Mr. Huntley and

23  Barbara Mele are doing business as Gateway, and therefore are personally liable

24  for any unlawful acts perpetuated by Gateway.

25        9.      Upon information and belief, Defendant Howard Kim Huntley ("Mr.

26  Huntley") is the Executive Director of LBAHC.  Upon information and belief, Mr.

27  Huntley is also an executive of Defendant Gateway.  Upon information and belief,

28  Mr. Huntley is also trustee of the Huntley Family Trust.  In these capacities, Mr.

Huntley was and is responsible for the operation and management of both the Rugby and Somerset properties. Mr. Huntley is an "owner" within the meaning of Cal. Gov't Code §§ 12927(e) and 12955(a) and a "person" subject to the anti-discrimination provisions of 42 U.S.C. § 3602(d). At all times mentioned and relevant herein, Mr. Huntley was and is a resident of the County of Los Angeles.

10.     Upon information and belief, at all times mentioned and relevant herein, Defendant Rosa Villagran ("Mrs. Villagran") was and is the property manager of the Rugby Property and an employee and agent of the Huntley Family Trust d/b/a Rugby Apts. Mrs. Villagran is an "owner" within the meaning of Cal. Gov't Code §§ 12927(e) and 12955(a) and a "person" subject to the anti-discrimination provisions of 42 U.S.C. § 3602(d). At all times mentioned and relevant herein, Mrs. Villagran was and is a resident of the County of Los Angeles.

11.     Upon information and belief, at all times mentioned and relevant herein, Defendant Carlos Villagran ("Mr. Villagran") was and is the property manager of the Rugby Property and an employee and agent of the Huntley Family Trust d/b/a Rugby Apts. Mr. Villagran is an "owner" within the meaning of Cal. Gov't Code §§ 12927(e) and 12955(a) and a "person" subject to the anti-discrimination provisions of 42 U.S.C. § 3602(d). At all times mentioned and relevant herein, Mr. Villagran was and is a resident of the County of Los Angeles.

12.     Upon information and belief, at all times mentioned and relevant herein, Defendant Barbara Mele ("Mrs. Mele") was and is the onsite resident property manager of the Somerset Property and an employee and agent of LBAHC and Gateway. Mrs. Mele is an "owner" within the meaning of Cal. Gov't Code §§ 12927(e) and 12955(a) and a "person" subject to the anti-discrimination provisions of 42 U.S.C. § 3602(d). At all times mentioned and relevant herein, Mrs. Mele was and is a resident of the County of Los Angeles.

13.     Upon information and belief, at all times mentioned and relevant herein, Defendant Louis Mele ("Mr. Mele") was and is the onsite resident property

manager of the Somerset Property and an employee and agent of LBAHC and Gateway.  Mr. Mele is an "owner" within the meaning of Cal. Gov't Code §§ 12927(e) and 12955(a) and a "person" subject to the anti-discrimination provisions of 42 U.S.C. § 3602(d).  At all times mentioned and relevant herein, Mrs. Mele was and is a resident of the County of Los Angeles.

14.     Plaintiffs are informed and believe, and, based thereon allege, that at all times herein mentioned each and every Defendant was the agent, servant, employee, co-conspirator, and/or representative of each and every other Defendant and was, in doing the things complained of herein, acting within the scope of said agency, service, employment, conspiracy, and/or representation, and that each and every Defendant was acting within his/her actual or apparent authority with the full knowledge and consent of each other Defendant.

## IV.     FACTUAL ALLEGATIONS

### A.  Introduction

15.     The Somerset and Rugby Properties (collectively referred to as "Subject Properties") are dwellings within the meaning of 42 U.S.C. § 3602(b).

16.     Defendants, acting individually or in concert, directly or through agents, have engaged in a pattern or practice of discrimination against families with children in the operation of their residential rental properties, including the Subject Properties.  Defendants continue to engage in such a pattern or practice of discrimination so as to constitute a continuing violation.

17.     Defendants' unlawful conduct includes, but is not limited to, commission of the following discriminatory housing practices:

   a.  Denying persons equal accommodations, and terms and conditions of tenancy because of familial status;

b. Making written and oral statements of preference, limitation, or discrimination with respect to the rental and use and enjoyment of housing accommodations;

c. Retaliating against persons who have opposed practices unlawful under the fair housing laws;

d. Aiding, abetting, and compelling the doing of discriminatory acts; and

e. Otherwise making accommodations unavailable to individuals with children.

18.     In the alternative, Defendants have negligently failed to hire, train, supervise and discipline their agents and employees, and themselves, in order to conform the operation of the Subject Properties to the standard of care for the industry.

**B.     The Tenancy of Toya Fuller-Corona and Duquon Corona**

19.     In 2001, Toya Fuller-Corona moved into a two bedroom unit located at the Somerset Property, unit #113.  In 2005, Duquon Corona moved into unit #113.  Duquon and Toya's children are now aged 9 and 2.

20.     Upon information and belief, until sometime between December 2009 and March 2010, LBAHC used a third-party, independent property management company, HDSI Management, Inc., to manage its rental properties, including the Somerset Property.

21.     Upon information and belief, Defendants Barbara Mele ("Mrs. Mele") and Louis Mele ("Mr. Mele") were employees/agents of HDSI Management, Inc. and managed the Somerset Property.

22.     Upon information and belief, sometime between December 2009 and March 2010, LBAHC discontinued using HDSI Management, Inc. to manage LBAHC rental properties.  However, Defendants Mr. and Mrs. Mele were kept on as the onsite managers of the Somerset Property and continued to manage the

1  property as agents of "Gateway Affordable Housing Coalition" ("Gateway"), a

2  California Corporation that shares the same Executive Director as LBAHC,

3  namely, Mr. Huntley.

4       23.   Prior to LBAHC's transfer of property management duties to

5  Gateway, the tenancy of Toya and Duquon was uneventful.  They had no issues

6  with management, and had not received any adverse notices.  They enjoyed their

7  housing, as did their children,

8       24.   However, after Gateway assumed management duties, Defendants

9  altered the Somerset Property to be less attractive to families.  Trees under which

10  children would congregate and play were cut down, a sandbox utilized by children

11  in the common area was removed and replaced with thorny rose bushes, a rocking

12  horse utilized by children in the common area was cut down, a basketball hoop

13  utilized by children in the common area was cut down and a grassy common area

14  where children used to play soccer was cordoned off to prevent children's access

15  and play.

16       25.   In addition, under the management of LBAHC, Gateway, Mrs. and

17  Mr. Mele and Mr. Huntley, new rules specifically targeting resident children were

18  instituted, announced  and enforced.  Although a sign posted at the Somerset

19  Property stated the courtyard hours were from 10:00 a.m. to 9:00 p.m., Mr. and

20  Mrs. Mele would go out into the courtyard at 8:00 p.m., start banging on a can and

21  yelling at all the children to go inside.  Adults could remain outside until 9:00 p.m.

22       26.   On or around May 6, 2010, Duquon was outside playing basketball

23  with his minor-aged children.  Mrs. Mele came out and told Duquon that the

24  children had to go inside, as it was past 8:00 p.m.  Duquon told Mrs. Mele that his

25  children did not have to go inside because he was supervising them.  Mrs. Mele

26  ended up calling the police department in attempts to get Duquon to take his

27  children inside.  The police arrived and told Mrs. and Mr. Mele that there was

28

nothing unlawful about children being outside after 8:00 p.m.  After the police left the property, Mr. and Mrs. Mele threatened Toya with eviction.

27.    The next day, on May 6, 2010, Duquon called Mr. Huntley to discuss the altercation and overly restrictive rules.  In response, Mr. Huntley expressed a dislike for children at the subject property and suggested Duquon and his family move.

28.    On May 7, 2010, Toya e-mailed Mr. Huntley informing him of the overly restrictive curfew being enforced at the property and complaining about the discriminatory behavior of Mr. and Mrs. Mele.  Mr. Huntley never responded to Toya's May 7, 2010 email.

29.    Also on May 7, 2010, Toya called Mr. Huntley to discuss the altercation and overly restrictive rules.  In response, Mr. Huntley strongly suggested Toya move her family.

30.    On May 14, 2010 at 8:03 p.m., a number of children were outside playing when Mrs. Mele came out of her unit to enforce the 8:00 curfew.  She yelled at the children, clapped her hands at the children and chased children around the courtyard.  yelling, "What did I say?  That's it!  Courtyard is closed!  8-o-clock!  Don't defy me like that!  We gonna hang out!  Warning!"  Mrs. Mele then ran after a child who was sitting quietly on his bicycle and clapped loudly at him "Let's go!  Courtyard is closed!  Stop riding the scooter!  Stop playin' ball!  Go hang out!"  Mrs. Mele then turned to Mr. Mele and asked if their daughter, who was also forcing children to go inside, "Did she get him?  I saw him over there.  Little brother's over there."  Mrs. Mele was referring to a child who had attempted to run away from the Meles.

31.    On May 20, 2010, Mrs. Mele issued Toya, a 30 day notice of termination of tenancy signed by Mr. Huntley.

32.     On May 22, 2010, children were playing at the basketball hoop. Mrs. Mele came out of her unit, yelled at the children and threatened to cut the hoop down.

33.     On May 24, 2010, Mr. and Mrs. Mele, with approval from Mr. Huntley, had the basketball hoop cut down.

34.     On July 20, 2010, Mrs. Mele handwrote a letter and personally delivered it to Toya. The letter stated "I was at the office today, and this is just a reminder, that as of July 31, 2010 your 60 Day agreement to vacate…will expire. Please contact the office, and let them know, what date, you will vacate. [Signed] Barbara mgr. Gateway Affordable Housing office phone number is 562-434-3333".

35.     Immediately after receiving the July 20, 2010 note, Toya sent a fax to LBAHC/Gateway which stated she never agreed to vacate her unit.

36.     Soon thereafter, on July 2010, Mr. Huntley called Toya and told her he wanted her and her family to move out of the subject property.

37.     On August 3, 2010 at 8:23 p.m., Mrs. Mele turned the sprinklers on while children were standing in the grass.

38.     On August 4, 2010, Mr. Huntley left a voicemail on Toya's telephone threatening to serve her with a 30 day notice.

39.     On August 9, 2010 at 8:50 p.m., Mrs. Mele again turned the sprinklers on while children were standing in the grass.

40.     On October 21, 2010, Mr. and Mrs. Mele's adult son came out of the Mele's unit and started yelling at children who were playing soccer in a grassy common area.

41.     On October 22, 2010, Mr. Mele cordoned off the entire grassy section of the Somerset Property and posted a sign "Keep off the grass," effectively leaving no place at the Somerset Property for children to play outside.

### i.   Fair Housing Foundation Investigates the Somerset Property

42.  On May 6, 2010, Toya contacted plaintiff Fair Housing Foundation ("FHF") to lodge a complaint against the Defendants, alleging familial status discrimination.

43.  In response, on June 1, 2010 and June 7, 2010, FHF conducted an onsite survey of Somerset Property tenants.  FHF made contact with ten tenants.  Nine tenants were aware of an 8:00 p.m. curfew for children only.  Four tenants reported witnessing Mrs. Mele calling a 10 year old girl a "bitch."  Three tenants stated the basketball hoop was cut down to prevent children from playing outside.  Two tenants stated Defendants have a rule that children must be supervised at all times by a parent.  Five tenants stated Defendants had a rule that children may not play outside *at all*.  One tenant witnessed Mrs. Mele approach two minor-aged children who were sitting quietly outside at 8:05 p.m.  This tenant witnessed Mrs. Mele tell the children to go inside, and when the children said "We're being quiet," Mrs. Mele "became aggressive" with the children and said "Oh, don't you start with me!"  Mrs. Mele then forced the children to go inside.  Another tenant reported that there used to be a sandbox at the Subject Property that the children would play in, but Mrs. Mele had the sandbox removed and replaced with rose bushes.  This tenant also reported there was a rocking horse that children used to play on, but that Mrs. Mele cut down the rocking horse.

44.  On July 14, 2010, FHF mailed a certified letter to Gateway c/o LBAHC. The letter summarized the findings of the Somerset Property survey, explained the fair housing laws regarding familial status, and included a conciliation agreement which requested Defendants attend a fair housing training class. On July 15, 2010, someone using the name "Huntley" signed for the certified letter.  FHF received no response to its July 14, 2010 letter.

45. On July 28, 2010, FHF mailed a certified "five day follow up" letter to Gateway c/o LBAHC. On July 29, 2010, the letter was signed for by someone using the name "K. Huntley."

46. On August 4, 2010, Mr. Huntley called the FHF and spoke with a FHF Case Analyst. During the conversation, Mr. Huntley admitted that there was a curfew enforced on children at the subject property. Mr. Huntley stated that he was not going to send any of his property managers to FHF's "stupid little school." Mr. Huntley stated FHF was "trying to extort property owners." And Mr. Huntley told the Case Analyst that he was going to report FHF to the Long Beach City Attorney's office, then hung up on the Case Analyst.

47. On August 10, 2010, Mr. Huntley called the FHF and spoke with FHF's Director of Investigations. During the conversation Mr. Huntley told the Director that FHF was attempting to extort him for money through requiring his property managers to attend fair housing training. Mr. Huntley told the Director that if he had the time, he would report FHF to the District Attorney's office. The Director asked Mr. Huntley if there is a curfew at the Somerset Property. Mr. Huntley again admitted there was a curfew on children at the subject property.

48. On August 17, 2010, FHF's Director of Investigations received a call from Andrew Kincaid ("Mr. Kincaid"). Mr. Kincaid identified himself as the Associate Director of Long Beach Affordable Housing. During this phone call, FHF's Director of Investigations summarized the allegations of the complaint, the surveys, and the behavior of Mr. Huntley and offered to fax the July 14, 2010 and July 28, 2010 letters to Mr. Kincaid.

49. On August 17, 2010, FHF faxed to Mr. Kincaid's attention the July 14, 2010 letter, and the July 28, 2010 follow up letter. FHF received a fax confirmation sheet. As of the date of this Complaint, Mr. Kincaid has not responded to FHF. No other Defendant has responded to FHF either.

50. On or around October 29, 2010, FHF interviewed two additional tenants of the Somerset Property. One tenant reported that Mrs. Mele called her 10-year-old daughter a "bitch." This tenant reported that the basketball hoop was cut down in order to prevent children from playing outside. This tenant reported her children are fearful to go outside because of Mr. and Mrs. Mele. The second tenant reported that her children are afraid of Mr. and Mrs. Mele, and that her children are not allowed to play outside. This tenant reported speaking to Mr. Huntley over the phone in the summer of 2010, regarding the problems she and her children were encountering with Mr. and Mrs. Mele. This tenant reported that Mr. Huntley said that he allowed Mrs. Mele to cut down the basketball hoop "so there will be no more problems." This tenant also witnessed an incident between Mrs. Mele and a minor-aged tenant, during which Ms. Mele threatened the minor's household with eviction.

51. On or around November 10, 2010, FHF interviewed five additional tenants of the Somerset Property. One tenant reported that he filed a report with the Sheriff's Department because Mr. and Mrs. Mele's adult daughter told his 12 year old son "I'm going to kick your ass." This tenant reported that Mrs. Mele constantly yells at his minor-aged children when the children are in the common area. This tenant reported that Mrs. Mele cut down the rocking horse, basketball hoop and trees, and removed a sandbox. This tenant reported that he personally spoke with Mr. Huntley and complained about the overly-restrictive rules and the unprofessionalism of Mr. and Mrs. Mele. Mr. Huntley told this tenant "You're going to follow the rules" or words to that effect. One minor-aged tenant reported that while she was playing outside with her friends, Mrs. Mele came out of her unit, set up a beach chair and started taking notes with a pad and paper. Mrs. Mele then told the children "I'm making a list, and I'm going to evict your parents if you do anything wrong." A different 10-year-old tenant reported that Mrs. Mele called her a "bitch." A different minor-aged tenant reported that Mr. and Mrs. Mele's

1  adult son went up to a group of children and introduced himself as "Psycho" and
2  then told them all to get back inside their apartments.

3  **C.  THE TENANCY OF JAVIER AND PATRICIA CASTRO**

4  52. On September 29, 2001, Javier Castro ("Javier") and Patricia Castro
5  ("Patricia") moved into a two-bedroom unit located at 6217 ½ Rugby Avenue
6  ("Rugby Property").  At the time, Javier and Patricia had two minor aged children.
7  As of the date of this Complaint, Javier and Patricia have four children, aged 10
8  months, 6 years, 11 years and 12 years.

9  53.  Since Javier and Patricia moved into the Rugby Property, Defendants
10  Rosa Villagran ("Mrs. Villagran") and Carlos Villagran ("Mr. Villagran") have
11  been the property managers of the Rugby Property.  Upon information and belief,
12  Mr. and Mrs. Villagran are employees/agents of the Huntley Family Trust d/b/a
13  "Rugby Apts."

14  54.  The Rugby Property is entirely gated, and has a large grassy area where
15  children like to play.

16  55.  Approximately four years ago, Mr. and Mrs. Villagran started harassing
17  minor-aged children who live at the Rugby Property.  Mr. and Mrs. Villagran
18  instituted and enforced a rule that children must be supervised by a parent at all
19  times in order to play outside.  Mr. and Mrs. Villagran would regularly tell children
20  who were playing outside to "go back inside."

21  56.  During this time, Mr. and Mrs. Villagran would repeatedly tell Javier and
22  Patricia's children to "go inside."  Mr. Villagran would tell Patricia that she needed
23  to either supervise her children while they were outside, or to bring them inside.

24  57.  In May of 2010, there was a children's birthday party at the Rugby
25  Property.  The tenants had rented an inflatable "bouncy house" for the celebration.
26  While children were jumping up and down inside the bouncy house, Mr. Villagran
27  walked by and without saying a word, unplugged the bouncy house, deflating it
28  and causing the house to collapse upon the children.

58.  In or around May of 2010, Javier and Patricia's 10-year-old daughter witnessed Mr. Villagran call a minor-aged boy a "mariconsito" (English translation: "little fag") after the boy hurt himself and started to cry.

**ii.  Fair Housing Foundation Investigates the Rugby Property**

59. On June 9, 2010, Javier contacted FHF to ask about the legality of the "adult supervision" rule, and reporting Mr. Villagran calling children names.

60.  On or around June 11, 2010, and in response to Javier's complaint, FHF conducted an onsite survey of tenants of the Rugby Property.  Five tenants were contacted.  All five confirmed that children were not allowed to play outside alone, and that children were required to be supervised at all times.  One tenant stated he had witnessed Mr. Villagran yelling at a child to "get off the grass."  A second tenant stated that Mr.  Villagran told her that she must supervise her children at all times and witnessed Mr. Villagran yelling at Javier and Patricia's children.  A third tenant stated that her children are not allowed to play outside at all.  This tenant witnessed Mr. Villagran unplug the bouncy house in May of 2010.  A fourth tenant stated that there are places on the Rugby Property where children can play safely, but that the managers do not allow children to play outside.  This tenant overheard Mr. Villagran tell a resident that they must supervise her children.  This tenant stated that Defendants had given her a written warning notice because her six-year-old child was playing outside unsupervised.  This tenant overheard Mr. Villagran yelling at Javier and Patricia's children to not play with a ball on the property.

61.  On June 22, 2010, a fifth tenant of the Rugby Property contacted FHF and reported that Mr. Villagran does not let children play outside.  This tenant stated he overheard Mr. Villagran tell a tenant to supervise her children.  This tenant witnessed Mr. Villagran tell Javier and Patricia's child to go inside.

62.  On July 27, 2010, FHF mailed a certified letter addressed to Mr. Huntley's home address.  The letter informed Defendants of the results of the FHF survey of

1  the Rugby Property and included a conciliation agreement stating the managers
2  should attend a fair housing training class.

3     63.  On July 30, 2010, the certified letter was delivered to Mr. Huntley's
4  address.

5     64.  After no response was received, on August 13, 2010, FHF then sent out a
6  "five day follow up letter" to Mr. Huntley's home address and again included the
7  July 30, 2010 letter and conciliation agreement.  On September 8, 2010, the August
8  13, 2010 letter was returned to FHF as "Unclaimed."  As of the date of this
9  Complaint, Mr. Huntley has not responded to FHF's attempts at conciliating the
10  issue at the Rugby Property.

11    65.  On November 23, 2010, a sixth tenant of the Rugby Property contacted
12  FHF and reported that Mr. Villagran does not let her child play outside.  She stated
13  Mr. Villagran told her that child must be supervised at all times.  This tenant states
14  her child is frightened of Mr. Villagran and runs inside every time Mr. Villagran is
15  at the property.

16  **V.    INJURY**

17    66.  As a result of the Defendants' above-described actions, Plaintiffs Toya
18  Fuller-Corona, Duquon Corona, Javier Castro, Patricia Castro, and their children
19  have suffered, are continuing to suffer, and will in the future suffer, irreparable loss
20  and injury, including, but not limited to, loss of their past and current housing,
21  deprivation of their full use and enjoyment of their past and current tenancies,
22  violation of the covenant of quiet enjoyment, invasion of the private right of
23  occupancy, violation of their civil rights, and bodily injury including emotional
24  distress, humiliation, embarrassment, and other special and general damages
25  according to proof.

26    67.  Defendants' discriminatory actions required Plaintiff FHF to divert its
27  scarce resources from its other fair housing activities, and frustrates FHF's mission
28  to eliminate housing discrimination and actively promote fair housing.

Accordingly, Plaintiff FHF is an "aggrieved party" within the meaning of 42 U.S.C. § 3602(i) and California Gov't Code § 12927(g), and seeks monetary, declaratory, and injunctive relief for housing discrimination by and through this action.

68. The unlawful practices of the Defendants as described above were and are wanton, willful, malicious, fraudulent, and/or oppressive; were intended to cause injury; and/or were done in conscious, callous, reckless, or deliberate disregard for the federally protected rights of Plaintiffs. Accordingly, Plaintiffs are entitled to punitive damages.

69. An actual case or controversy exists between the parties regarding Defendants' duties under federal and state fair housing laws. Accordingly, Plaintiffs are entitled to declaratory relief.

70. Unless enjoined, Defendants will continue to engage in the unlawful acts and the pattern or practice of discrimination described above. Plaintiffs have no adequate remedy at law. Accordingly, Plaintiffs are entitled to injunctive relief.

## VI.   CLAIMS FOR RELIEF

### First Claim - Fair Housing Act

### (By All Plaintiffs Against All Defendants)

71. Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 70 above.

72. Defendants, by and through a pattern or practice of purposeful discrimination on the basis of familial status, have violated the federal Fair Housing Act, 42 U.S.C. §§ 3601, et seq., ("FHA") in that Defendants have injured Plaintiffs by engaging in the following discriminatory housing practices:

       a.     Otherwise making accommodations unavailable to individuals with children in violation of 42 U.S.C. §3604(a);

b.  Discriminating against the Plaintiffs because of familial status in the terms, conditions, privileges, and provision of services and facilities, in violation of 42 U.S.C. § 3604(b);

c.  Making written and oral statements of preference, limitation, or discrimination with respect to the rental and use and enjoyment of housing accommodations in violation of 42 U.S.C. § 3604 (c); and

d.  Interfering with, intimidating, and threatening Plaintiffs on account of having exercised their rights as granted or protected by the FHA, in violation of 42 U.S.C. §3617.

73.  As a direct and proximate result of the acts and omissions herein alleged, Plaintiffs have suffered, and continue to suffer injury.

74.  Defendants' conduct constitutes an ongoing and continuous violation of the FHA.  Unless enjoined, said conduct will continue to inflict injuries for which Plaintiffs have no adequate remedy at law.

75.  Pursuant to 42 U.S.C. §3613(c)(1) and (2) Defendants are liable to Plaintiffs for compensatory damages, punitive damages, injunctive relief, and attorneys fees and costs.

### Second Claim – California Fair Employment and Housing Act
### (By All Plaintiffs Against All Defendants)

76.  Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 75 above.

77.  Defendants, by and through a pattern or practice of discrimination on the basis of familial status, violated the California Fair Employment and Housing Act, Cal. Gov't Code §12955 et seq., ("FEHA"), by engaging in the following discriminatory housing practices:

a.   Discriminating against or harassing persons because of familial status in violation of Cal. Gov't Code § 12955(a);

b.   Making, printing and publishing statements with respect to the rental of a housing accommodation that indicates preference, limitation, or discrimination based on familial status, or an intention to make that preference, limitation, or discrimination, in violation of Cal. Gov't Code § 12955(c);

c.   Discriminating against persons on the basis of familial status in violation of Section 51 of the Civ. Code, as that section applies to housing accommodations, in violation of Cal. Gov't Code § 12955(d);

d.   Retaliating against persons who have opposed discriminatory practices, in violation of Cal. Gov't Code § 12955(f);

e.   Aiding, abetting, inciting, compelling, or coercing the doing of any of the unlawful acts or practices prohibited by FEHA, or attempting to do so, in violation of Cal. Gov't Code § 12955(g);

f.   Otherwise making unavailable or denying a dwelling based on discrimination because of familial status, in violation of Cal. Gov't Code § 12955(k); and

g.   Implementing and enforcing a policy or practice that has a discriminatory effect on families with children in violation of Cal. Gov't Code § 12955.8.

78.  As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer injury.

79.  Defendants' conduct constitutes an ongoing and continuous violation of the FEHA.  Unless enjoined, said conduct will continue to inflict injuries for which Plaintiffs have no adequate remedy at law.

80.  Pursuant to Cal. Gov't Code § 12989.2, Plaintiffs are entitled to injunctive relief, compensatory damages, punitive damages, attorneys' fees and costs.

### Third Claim-Unruh Civil Rights Act
**(By Plaintiffs Toya Fuller-Corona and Duquon Corona against Defendants Long Beach Affordable Housing Coalition, Gateway Affordable Housing Corporation, Howard Kim Huntley, Louis Mele and Barbara Mele)**
**(By Plaintiffs Javier Castro and Patricia Castro against Defendants Huntley Family Trust d/b/a Rugby Apts., Howard Kim Huntley, Rosa Villagran and Carlos Villagran)**

81.  Plaintiffs hereby reallege and incorporate paragraphs 1 through 80 as if fully set forth herein.

82. Defendants Long Beach Affordable Housing Coalition, Gateway Affordable Housing Corporation, Howard Kim Huntley, Louis Mele and Barbara Mele injured Plaintiffs Toya Fuller-Corona and Duqon Corona in violation of the Unruh Civil Rights Act, Cal. Civ. Code §51 et seq. ("Unruh Act") by discriminating against them on the basis of their familial status.

83.  Defendants Huntley Family Trust d/b/a Rugby Apts., Howard Kim Huntley, Carlos Villagran and Rosa Villagran injured Plaintiffs Javier Castro and Patricia Castro in violation of the Unruh Civil Rights Act, Cal. Civ. Code §51 et seq. ("Unruh Act") by discriminating against them on the basis of their familial status.

84.  Pursuant to California Civil Code § 52.1(f), the above-respective Defendants are liable to respective Plaintiffs in an amount totaling no less than $4,000 for every violation of California Civil Code §51 et seq. or three times actual

1  damages, for injunctive relief and for attorneys' fees and costs incurred in this

2  action.

### Fourth Claim - California Unfair Business Practices Act
### (By all Plaintiffs against Huntley Family Trust d/b/a Rugby Apts., Gateway Affordable Housing Corporation, Long Beach Affordable Housing Coalition, Inc. and Howard Kim Huntley)

85. Plaintiffs re-allege and incorporate by reference paragraphs 1-84 of the Complaint herein.

86.  In acting as alleged herein, Defendants Huntley Family Trust d/b/a Rugby Apts., Gateway, LBAHC and Mr. Huntley have failed to comply with applicable laws including the FHA, the FEHA and the Unruh Act.  Accordingly, Defendants Huntley Family Trust d/b/a Rugby Apts., Gateway, LBAHC and Mr. Huntley have engaged in acts of unfair and unlawful business acts or practices as proscribed by Cal. Bus. & Prof. Code §17200, et seq.  By bringing this action, Plaintiffs are acting in the interest of themselves and the general public, pursuant to Cal. Bus. & Prof. Code §17204.

87.  Plaintiffs and the general public, have suffered, and continue to suffer, irreparable harm due to the discriminatory policies and practices of Defendants Huntley Family Trust d/b/a Rugby Apts., Gateway, LBAHC and Mr. Huntley and these Defendants' continuing and conscious disregard of the fair housing rights of families with children.

88.  Pursuant to Cal. Bus. & Prof. Code §17203, Plaintiffs seek to enjoin Defendants Huntley Family Trust d/b/a Rugby Apts., Gateway, LBAHC and Mr. Huntley from their continuing commission of the acts alleged above, which if not enjoined will continue to irreparably harm Plaintiffs and the citizens of the State of California, harm for which there is no plain, speedy or adequate remedy at law.

**Fifth Claim- Negligence**

**(By Plaintiffs Toya Fuller-Corona and Duquon Corona against Defendants Long Beach Affordable Housing Coalition, Gateway Affordable Housing Corporation, Howard Kim Huntley, Louis Mele and Barbara Mele)**
**(By Plaintiffs Javier Castro and Patricia Castro against Defendants Huntley Family Trust d/b/a Rugby Apts., Howard Kim Huntley, Rosa Villagran and Carlos Villagran)**
**(By Plaintiff FHF against All Defendants)**

89.  Plaintiffs re-allege and incorporate by reference paragraphs 1-88 of the Complaint herein

90.  Defendants owed, and continue to owe Plaintiffs a duty to operate the Subject Properties in a manner that is free from unlawful discrimination and to employ, train, and supervise their directors, employees, managers, agents, and themselves to fulfill that duty.  Defendant Mr. Huntley owes Plaintiffs an additional duty of care due to the fact that he is a California licensed real estate broker.  As a REALTOR®, Mr. Huntley has agreed to strictly follow a code of ethics which includes an agreement not to discriminate on the basis of a protected category, including familial status.

91.Defendants breached their respective duties to Plaintiffs by engaging in a pattern and practice of discrimination against families with children as herein alleged.

92.  Defendants' negligence includes but is not limited to:

    A. Defendants' negligent failure to train and supervise themselves regarding compliance with the requirements of federal and state fair housing laws; and

    B. Defendants' negligent failure to operate the Subject Properties in conformity with accepted industry custom and standards.

93.  As a result of Defendants' negligence, Toya Fuller-Corona, Duqon Corona, Javier Castro and Patricia Castro have been injured.

94.  As a result of Defendants' negligence, FHF was forced to divert its scarce resources, and experienced a frustration of its mission to eliminate discrimination in housing.

## VII.  PRAYER FOR RELIEF

Plaintiffs pray this Court enter judgment as follows:

1.      Declare that the discriminatory practices of the Defendants as set forth above, violate the Fair Housing Act, as amended, 42 U.S.C. § 3601, et seq., the California Fair Employment and Housing Act, Cal. Gov't Code § 12955, et seq., the Unruh Act, Cal. Civ. Code §51, et seq. and the California Unfair Business Practices Act, Cal. Bus. & Prof. Code § 17200, et seq.

2.      Enjoin Defendants, their agents, employees, successors, and all other persons in active concert or participation with any of the Defendants, from discriminating on the basis of familial status.

3.      For temporary, preliminary and permanent injunctive relief enjoining Defendants from discriminating against prospective renters and in-place tenants.

4.      Order all Defendants, as well as all employees and agents of Defendants, to engage in comprehensive fair housing training.

5.      Order Defendants to submit to monitoring of their practices and records in order to ensure compliance with the fair housing laws.

6.      Award compensatory damages to Plaintiffs.

7.      Award punitive damages to Plaintiffs.

8.      Award any other such damages as may be allowed under all the above federal and state laws.

9.      Award Plaintiffs their reasonable attorneys' fees and costs.

10.     Additional and further relief which the Court deems just and proper.

## VIII. JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury as to all issues.

Dated: December 6, 2010

Respectfully Submitted,

ANNETTE MORASCH
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge <u>Gary A. Feess</u> and the assigned discovery Magistrate Judge is <u>Jay C. Gandhi</u>.

The case number on all documents filed with the Court should read as follows:

## CV!0-9345 GAF (JCGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

Unless otherwise ordered, the The United States District Judge assigned to this case will hear and determine all discovery related motions.

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| ☑ **Western Division** | ☐ **Southern Division** | ☐ **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

---

ANNETTE MORASCH (State Bar No. 263797)
amorasch@hrc-la.org
Southern California
Housing Rights Center, Inc.
520 S. Virgil Ave., Suite 400
Los Angeles, CA 90020

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOYA FULLER-CORONA, an individual;  (See attachment for additional parties) <br><br> PLAINTIFF(S) <br><br> v. <br><br> HUNTLEY FAMILY TRUST d/b/a RUGBY APTS.; LONG BEACH AFFORDABLE HOUSING COALITION   (See attachment for additional parties) <br><br> DEFENDANT(S). | CASE NUMBER <br><br> CV10 9345 GAF JCG <br><br><br> **SUMMONS** |

TO:   DEFENDANT(S): _____

    A lawsuit has been filed against you.

    Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney,  _Annette Morasch_____, whose address is _520 S. Virgil Ave., Suite 400,  Los Angeles, CA 90020_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:    DEC - 6 2010        By: _____ CHRISTOPHER POWERS

                                         Deputy Clerk

                                       (Seal of the Court)

1181

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

## ATTACHMENT A

**PLAINTIFFS CONT.**

**DUQUON CORONA, an individual; JAVIER CASTRO**, an individual; **PATRICIA CASTRO**, an individual; **and FAIR HOUSING FOUNDATION**, a California non-profit corporation;

**DEFENDANTS CONT.**

**GATEWAY AFFORDABLE HOUSING CORPORATION**, a California corporation d/b/a **GATEWAY AFFORDABLE HOUSING COALITION; HOWARD KIM HUNTLEY,** as an individual owner, as Executive Director of both Long Beach Affordable Housing Coalition, Inc. and Gateway Affordable Housing Corporation and as trustee of Huntley Family Trust; **ROSA VILLAGRAN**, as an individual and as a managing agent of Huntley Family Trust d/b/a Rugby Apts.; **CARLOS VILLAGRAN**, as an individual and as a managing agent of Huntley Family Trust d/b/a Rugby Apts.; **LOUIS MELE**, as an individual and as a managing agent of Long Beach Affordable Housing Coalition, Inc., and Gateway Affordable Housing Corporation; **BARBARA MELE**, as an individual and as a managing agent of Long Beach Affordable Housing Coalition, Inc., and Gateway Affordable Housing Corporation; DOES I-X, inclusive,

ANNETTE MORASCH (State Bar No. 263797)
amorasch@hrc-la.org
Southern California
Housing Rights Center, Inc.
520 S. Virgil Ave., Suite 400
Los Angeles, CA 90020

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOYA FULLER-CORONA, an individual;  (See attachment for additional parties)<br><br>PLAINTIFF(S)<br><br>v.<br><br>HUNTLEY FAMILY TRUST d/b/a RUGBY APTS.; LONG BEACH AFFORDABLE HOUSING COALITION   (See attachment for additional parties)<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV10  9345  GAF  JCG<br><br><br>**SUMMONS** |

TO:   DEFENDANT(S): _____

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney,  Annette Morasch _____, whose address is _520 S. Virgil Ave., Suite 400,  Los Angeles, CA 90020_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___DEC - 6 2010_____

By: _____CHRISTOPHER P_____

Deputy Clerk

(Seal of the Court)

1181

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

## ATTACHMENT A

**PLAINTIFFS CONT.**

**DUQUON CORONA, an individual; JAVIER CASTRO**, an individual; **PATRICIA CASTRO**, an individual; **and FAIR HOUSING FOUNDATION**, a California non-profit corporation;

**DEFENDANTS CONT.**

**GATEWAY AFFORDABLE HOUSING CORPORATION**, a California corporation d/b/a **GATEWAY AFFORDABLE HOUSING COALITION; HOWARD KIM HUNTLEY,** as an individual owner, as Executive Director of both Long Beach Affordable Housing Coalition, Inc. and Gateway Affordable Housing Corporation and as trustee of Huntley Family Trust; **ROSA VILLAGRAN**, as an individual and as a managing agent of Huntley Family Trust d/b/a Rugby Apts.; **CARLOS VILLAGRAN**, as an individual and as a managing agent of Huntley Family Trust d/b/a Rugby Apts.; **LOUIS MELE**, as an individual and as a managing agent of Long Beach Affordable Housing Coalition, Inc., and Gateway Affordable Housing Corporation; **BARBARA MELE**, as an individual and as a managing agent of Long Beach Affordable Housing Coalition, Inc., and Gateway Affordable Housing Corporation; DOES I-X, inclusive,